# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                           )
DAVID L. CLEVELAND,        )
                           )
            Plaintiff,      )
                           )
      v.                )     Civil Action No. 13-1627 (RBW)
                           )
UNITED STATES           )
DEPARTMENT OF STATE,    )
                           )
            Defendant.   )
_____)

## MEMORANDUM OPINION

David L. Cleveland, the plaintiff in this civil matter, alleges that the defendant, the

Department of State ("the State Department"), violated the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552 (2012), by not providing to him the documents requested and by

failing to process his FOIA request within the statutorily mandated twenty-day timeframe. <u>See</u>

Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ 16–21. Currently before the

Court are the parties' cross-motions for summary judgment. <u>See</u> Plaintiff's Motion for Summary

Judgment ("Pl.'s Mot.") at 1; Defendant's Motion for Summary Judgment ("Def.'s Mot.") at 1.

After carefully considering the parties' submissions,[1] the Court concludes for the reasons stated

below that it will grant the defendant's motion and deny the plaintiff's motion.

---

[1] In addition to the filings already referenced, the Court considered the following submissions and their supporting exhibits in resolving the parties' motions: (1) the Plaintiff's Memorandum of Points and Authorities in Support of His Motion for Summary Judgment ("Pl.'s Mem."); (2) the Plaintiff's Statement of Material Facts not in Genuine Dispute ("Pl.'s Facts"); (3) Pl.'s Mem., Exhibit ("Ex.") 1 (Country Reports of Human Rights Practices for 2011-Cameroon (the "Report")); (4) Pl.'s Mem., Ex. 2 (plaintiff's September 17, 2012 FOIA request, which was provided to the Court as an attachment to the complaint ("FOIA Request")); (5) Pl.'s Mem., Ex. 3 ("Declaration of David L.

(continued …)

# I. Background[2]

## A. The Country Reports on Human Rights Practices for 2011-Cameroon

The plaintiff's FOIA request concerns a fifteen-page report issued by the State Department on May 24, 2012, entitled "Country Reports on Human Rights Practices for 2011-Cameroon" (the "Report"). Pl.'s Mem. at 3; see also Pl.'s Mot., Exhibit ("Ex.") 1 (the "Report"). Specifically, the plaintiff sought "a copy of all documents or electronically stored information relating to [the Report]." Pl.'s Mem., Ex. 2 (plaintiff's September 17, 2012 FOIA request, which was provided to the Court as an attachment to the complaint ("FOIA request")). The Report was prepared

> using information from U.S. embassies and consulates abroad, foreign government officials, nongovernmental and international organizations, and published reports. U.S. diplomatic missions abroad prepared the initial drafts of the individual country reports, using information they gathered throughout the year from a variety of sources, including government officials, jurists, the armed forces, journalists, human rights monitors, academics, and labor activists. This information gathering can be hazardous, and U.S. Foreign Service personnel regularly go to great lengths, under trying and sometimes dangerous conditions, to investigate reports of human rights abuse.

---

( . . . continued)
Cleveland Concerning the September 2d documents" ("Cleveland Decl.")); (6) the defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment ("Def.'s Mem. I"); (7) the defendant's Statement of Material Facts ("Def.'s Facts"); (8) the Declaration of John F. Hackett, ECF No. 17-1 ("Hackett Decl."); (9) the Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment (Def.'s Mem. II); (10) the Declaration of John F. Hackett, ECF No. 18-1 ("Hackett Decl. II"); (11) the Defendant's Response to Plaintiff's Statement of Material Facts ("Def.'s Response Facts"); and (12) Cleveland's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and In Support of Cleveland's Motion for Summary Judgment ("Pl.'s Opp'n").

[2] The following facts are undisputed unless otherwise noted.

Hackett Decl. ¶ 11.  However, the Report does not cite any specific sources as support for the numerous factual assertions set forth in the Report.  See Pl.'s Mem. at 3–4.

## B. The Plaintiff's FOIA Request

The plaintiff submitted his initial FOIA request to the State Department on September 17, 2012.  Hackett Decl. ¶ 4; Pl.'s Facts ¶ 5.  In that request, the plaintiff sought "all documents or electronically stored information relating to [the Report] which was published on May 24, 2012." Hackett Decl. ¶ 4; Pl.'s Mem., Ex. 2 (FOIA request).  Specifically, the plaintiff sought information regarding

> who wrote the [R]eport, and what sources of information they relied upon to write it. . . [, as well as] copies of all documents (including those in French and in any other language, and including emails, telegrams, electronic files, and electronic communications) regarding to or relating to the research, investigation, preparation, writing[,] and publication of this report.

Hackett Decl. ¶ 4; Pl.'s Mem., Ex. 2 (FOIA request).  The plaintiff requested that the State Department

> search all places and records systems, including but not limited to 1) electronic [databases] in Cameroon, in all overseas posts and in the United States; 2) paper files; 3) data compilations from which data can be obtained [to include: t]he Central Foreign Policy Records file[;] [t]he archive email folder[; c]lassified paper files[; u]nclassified paper files[; r]etired files[; r]etired file manifest[; and n]on-public documents.

Pl.'s Mem., Ex. 2 (FOIA request).  The plaintiff indicated that he was willing to pay up to $50 for the responsive documents and was seeking the information "for personal use and not for commercial use."  Id.  He was notified on September 19, 2012, that the Office of Information Programs and Services ("IPS") "would begin processing his request based upon the information provided in his communication."  Hackett Decl. ¶ 5.

On September 2, 2014, two years after the plaintiff made his FOIA request,

> IPS informed the [p]laintiff that [its] searches of the agency records of the Bureau of Democracy, Human Rights and Labor, the Bureau of African Affairs, . . . the U.S. Embassy in Yaoundé, Cameroon [and, per the plaintiff's request, the Central Foreign Policy Records (the "Central File")], had been completed and resulted in [the] retrieval of [fifty-six] responsive records.

Hackett Decl. ¶¶ 8, 12–26.  Of these fifty-six responsive documents, "IPS released [five] documents in full, [fourteen] documents in part, . . . withheld . . . [thirty-seven] documents [in full, and] advised [the p]laintiff that one document required interagency coordination." Id. ¶ 8. Ultimately, on November 20, 2014, in its Hackett Declaration, the State Department notified the plaintiff that the interagency review "had been completed and the document was released in part." Id. ¶ 9.  It also provided a narrative Vaughn index.[3]  See id. ¶¶ 27–47.  Of the fifty-one documents withheld, either in full or in part, the State Department cited 5 U.S.C. § 552(b)(5) ("Exemption 5") as its ground for withholding fifty of those documents, id. ¶¶ 27–30, 35–45, 47, and cited 5 U.S.C. § 552 (b)(6) ("Exemption 6") as its ground for withholding one document, id. ¶¶ 31–34, 46.

The plaintiff contends that he is entitled to summary judgment because the State Department failed to: (1) conduct a search adequate to discover documents responsive to his FOIA request; (2) describe the responsive documents it has withheld from disclosure; (3) provide

---

[3] Vaughn indices are a mainstay of FOIA proceedings at the district court level in this Circuit.  See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).  Vaughn "recognized the burden placed upon the district court when the government fails to establish with sufficient specificity the basis of claimed exemption from FOIA disclosure of specific documents."  Summers v. DOJ, 140 F.3d 1077, 1080–81 (D.C. Cir. 1998).  "To alleviate that burden, [the Circuit] established the requirement for a Vaughn index so that a district judge could examine and rule on each element of the itemized list."  Id. (internal citation omitted).  The Circuit subsequently elaborated that although it "ha[s] never required repetitive, detailed explanations for each piece of withheld information," Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (citation omitted), it has not retreated from the requirement that "'[t]he Vaughn index 'must adequately describe each withheld document or deletion from a released document,' and 'must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant,'" Summers, 140 F.3d at 1080 (citation omitted); see Morley, 508 F.3d at 1122.

the reasons why the documents are exempt from disclosure; and (4) explain why portions of the withheld documents cannot be segregated from the exempt portions of the documents and produced to him.  See generally Pl.'s Mot.; Pl.'s Mem.  The State Department opposes the plaintiff's motion in all respects.  See generally Def.'s Mot.; Def.'s Mem. I.  As noted, the State Department also requests summary judgment, arguing that (1) it conducted adequate searches for responsive documents; (2) the documents and information not produced to plaintiff are exempt from disclosure; and (3) all reasonably segregable material has been released to the plaintiff.

## II.  STANDARD OF REVIEW

Courts will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 67 F. Supp. 3d 290, 297 (D.D.C. 2014).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and may do so by "citing to particular parts of materials in the record, including . . . affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A).  "[A] dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable [factfinder] could [render a decision] for the nonmoving party" on an element of the nonmoving party's claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits affidavits, declarations, or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).  In opposing a summary judgment motion, a party may not "replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit," Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888

(1990), but rather must "set forth specific facts showing that there is a genuine issue [of fact]," Liberty Lobby, 477 U.S. at 248 (internal quotations omitted).

Courts review an agency's response to a FOIA request de novo, 5 U.S.C. § 552(a)(4)(B), and "FOIA cases typically and appropriately are decided on motions for summary judgment," ViroPharma Inc. v. HHS, 839 F. Supp. 2d 184, 189 (D.D.C. 2012) (citations omitted). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and nonconclusory," Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted), and when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith," Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." Span v. U.S. Dep't of Justice, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989)).

6

### III. LEGAL ANALYSIS

For the reasons that follow, the Court finds that: (1) the defendant conducted reasonable and adequate searches, where necessary; (2) the defendant withheld from disclosure only information based properly on a FOIA exemption; and (3) the defendant released all reasonably segregable information not otherwise exempt from disclosure.

#### A.  The Adequacy of the Defendant's Search

The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances.  Truitt v. U.S. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990). To satisfy its burden to show that no genuine issue of material fact exists as to the adequacy of its search, the State Department must show that each agency component "has conducted a search reasonably calculated to uncover all relevant documents," Elliott v. U.S. Dep't of Agric., 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)), and it may base its showing on affidavits or declarations submitted in good faith, provided that these affidavits or declarations explain in reasonable detail the scope and method of the search, see Morley, 508 F.3d at 1116 (citing Goland, 607 F.2d at 352).  "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with [the] FOIA."  North v. U.S. Dep't of Justice, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)).  There is no requirement that an agency search every record system in response to a FOIA request; rather, it may limit its search to only those locations where responsive documents likely are maintained. Porter v. CIA, 778 F. Supp. 2d 60, 69 (D.D.C. 2011).  The question a court must answer in considering the adequacy of an agency's search is "not whether other responsive documents may

exist, but whether the search itself was adequate." Moore v. Bush, 601 F. Supp. 2d 6, 13 (D.D.C. 2009) (citing Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)).  However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Beltranena v. Clinton, 770 F. Supp. 2d 175, 183 (D.D.C. 2011) (quoting Truitt, 897 F.2d at 542); see also Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999) (stating that summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search (citation omitted)).

    In response to the plaintiff's FOIA request, the State Department "evaluate[d] the request to determine which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested." Hackett Decl. ¶ 12.  "After reviewing [the p]laintiff's request, [the Office of Information Programs and Services ("IPS")] determined that the only offices reasonably likely to have documents responsive to [the p]laintiff's request were the Bureau of Democracy, Human Rights, and Labor[;] the Bureau of African Affairs[;] and the U.S. Embassy in Yaoundé, Cameroon." Id. ¶ 14.

> The Bureau of Democracy, Human Rights, and Labor ("DRL") promotes democracy, human rights, the rule of law, and labor rights internationally. . . . DRL is the primary bureau responsible for corroborating, analyzing, and editing the information contained within the Human Rights Reports, with input from the relevant diplomatic post and geographic bureau.

Id. ¶ 15 (emphasis added).

    In conducting its search of the DRL:

> A Foreign Affairs Officer, who was knowledgeable of both the FOIA request at issue and the DRL/AF records systems, conducted a search of DRL/AF's electronic records.  DRL/AF electronic records are organized by country and theme, consisting of an electronic shared drive (a directory of folders stored on a local network) and e-mails, including archived e-mails.  All files used and

compiled for the Cameroon [Human Rights Report] are kept electronically; therefore DRL/AF's paper records were not searched. A Foreign Affairs Officer conducted a search of the DRL/AF's electronic records using the search terms the officer determined would be reasonably likely to retrieve all responsive records: "HRR Report Cameroon" and the date range April 9, 2011 – May 24, 2012. This search was designed to capture all responsive records within DRL's records at the time of the search, including source information used to compile the Cameroon HRR.

Id. ¶ 16. After conducting this search the State Department "located [fourteen] responsive documents." Id. ¶ 17. Of these fourteen responsive documents, "[t]he Department released [two] documents in part and withheld [twelve] documents in full." Id.

In conjunction with the review of the plaintiff's FOIA request, the "DRL determined that since [the p]laintiff's FOIA request was for records relating to the Human Rights Report for Cameroon, the only DRL component reasonably likely to maintain responsive records was the Office of Africa ('DRL/AF')." Id. ¶ 15.

The Bureau of African Affairs ("AF") is charged with advising the Secretary of State on matters pertaining to Sub-Saharan Africa. AF supports democracy, good governance, economic growth and development. It supports conflict prevention, mitigation, and resolution. AF also supports Presidential initiatives such as the Feed the Future, the Global Health Initiative, and the Global Climate Change Initiative. AF, the geographic bureau responsible for Cameroon, participates in the process of reviewing, editing, and clearing the Human Rights Report.

Id. ¶ 18. In considering the plaintiff's FOIA request, the Bureau of African Affairs

determined that the only AF components that were reasonably likely to have been involved with the process of reviewing, editing, and clearing the Human Rights Report, and thus reasonably likely to contain responsive record, were the Executive Office ("AF/EX"), the Office of Central Africa ("AF/C") and the Office of Regional Security Affairs ("AF/RSA").

Id. Neither the Executive Office nor the Office of Central Africa maintain paper records. Id. ¶¶ 19, 20. And while the Office of Regional Security Affairs "keeps very limited paper records,

which are organized by subject, country, and [Traffic Analysis by Geography and Subject ('TAGS')]," id. ¶ 21, all three offices organize their electronic records by country and issue, and the records "consist[] of an electronic shared drive (a directory of folders stored on a local network), Word documents, and e-mails,"[4] id. ¶¶ 19, 20, 21. All three offices had a Management Analyst or, in the case of the Office of Regional Security Affairs, a Human Rights Officer, all of whom were familiar with the plaintiff's FOIA request and their respective office's records system. Id. ¶¶ 19, 20, 21. The Executive Office and the Office of Central Africa conducted "a search of [the office's] electronic records, including the Cameroon folder, and e-mail records, using the terms 'HRR,' 'Human Rights,' PHUM,' or 'Human Rights Report' and the date range [of] April 9, 2011 to May 24, 2012." Id. ¶¶ 19, 20. The Office of Regional Security Affairs "conducted a search of the AF/RSA's electronic and paper records using the terms 'HHR' or 'Human Rights Report' and the date range [of] April 9, 2011 to May 24, 2012."[5] Id. ¶ 21. In addition to the electronic files already discussed, as noted earlier, the Office of Regional Security Affairs also "[k]eeps very limited paper records, which are organized by subject, country, and TAGS." Id. ¶ 21. "The [Human Rights] Officer conducted a search of [its] . . . paper records using the terms 'HHR' or 'Human Rights Report' and the date range April 9, 2011 to May 24,

---

[4] The Office of Regional Security Affairs maintains an additional organization category—Traffic Analysis by Geography and Subject ("TAGS"). Haggerty Decl. ¶ 20. "There are three types of TAGS: subject TAGS, which identify broad, general subject matters; geopolitical TAGS, which identify geopolitical subjects such as countries; and program TAGS, which identify information relevant to a specific Department program." Id. at 9 n.6.

[5] The plaintiff does not challenge the search terms used by the State Department. See generally Pl.'s Mem; Pl.'s Opp'n. The Court does, however, note that the Office of Regional Security Affairs did not include the term "Human Rights" or "PHUM" in its search and does not indicate why this term was not included. See Hackett Decl. ¶ 21. The State Department does, however, assert that it "relies on the knowledge and expertise of the employees of each bureau/office/post to . . . determine which search terms would yield potentially responsive records, because they are most knowledgeable about the organization of the records system in use." Id. ¶ 14. Therefore, the Court concludes that the Office of Regional Security Affairs' failure to include the additional two terms in the search of its records did not render its search inadequate.

2012." Id. From these three offices, two responsive documents were located and "[t]he Department withheld both documents in full." Id. ¶ 22.

Additionally, "[u]pon review of the [plaintiff's] FOIA request, a Foreign Service Officer who was knowledgeable of both the [plaintiff's] FOIA request at issue and the records system of the U.S. Embassy at Yaoundé[, Cameroon] determined that the only component reasonably likely to contain responsive records was the Political-Economic ('POL/ECON') Section." Id. ¶ 23.

> The POL/ECON Section advises the Chief of Mission and the U.S. Government on Cameroon's political, economic, and commercial policies as well as on the U.S.-Cameroon bilateral relationship. The section follows issues relating to human rights, democracy, agriculture, energy, finance, intellectual property rights, labor rights and relations, transportation, telecommunications, and environment, science and technology, and health.

Id. In conducting searches of its paper[6] and electronic records,[7] "[a] Foreign Service Officer conducted a search of the POL/ECON Section's electronic records using the terms 'Human Rights Report,' 'Human Rights,' '2011,' or 'Country Report' and the date range [of] April 9, 2011 to May 24, 2012." Id. ¶ 24. "This search was designed to capture all responsive records within Embassy Yaoundé's file systems that existed at the time of the search, including source information used to compile the [Report]." Id. From this search, forty-one responsive documents and one source document were retrieved. Id. ¶¶ 24–25. Of these documents, "[t]he

---

[6] The paper records searched included "a search of all of the POL/ECON Section's 2011 and 2012 paper files, . . . the files of staff who no longer work at the Embassy who worked on the 2011 human rights report, and the files of the human rights officer." Hackett Decl. ¶ 24.

[7] The electronic records "included the electronic personal folders of those personnel who worked on the 2011 Human Rights Report, the PHUM folders, the political officer folders, and an electronic record list of retired files." Hackett Decl. ¶ 24.

Department released [five] documents in full, [fourteen] documents in part, and withheld

[twenty-two] documents in full." Id. ¶ 25.

Finally, while the State Department "determined [that although] the Central Foreign

Policy Records [were] not reasonably likely to contain responsive records," Def.'s Mem. II at 11,

because the plaintiff specifically requested these records be searched, the State Department had

> [a]n IPS analyst with knowledge of both the request and the records system
> conduct[] a full-text search of the Central File using . . . [a] combination of search
> terms: []"Yaounde" or "Cameroon" or "CM"[] and [] "human rights report" or
> "HRR" or "country reports on human practices"[] for the time period [of] April 9,
> 2011 through May 24, 2012,

Hackett Decl. ¶ 26. The Central Foreign Policy Records repository

> contains over [thirty] million records of a substantive nature that establish,
> discuss, or define foreign policy, set precedents, or require action or use by more
> than one office [and a]mong other records [it] includes official record copies of
> almost all incoming and outgoing cables between the Department and Foreign
> Service posts, as well as other select substantive correspondence records,
> including: diplomatic notes; correspondence to and from the White House,
> members of Congress, and other federal agencies; position papers and reports;
> memoranda of conversations; and interoffice memoranda.

Id. "This search located no responsive documents." Id.

The Hackett Declaration demonstrates the State Department's thorough and

methodological approach in responding to each component of the plaintiff's FOIA request. As

the Court has explained, in processing each element of the plaintiff's request, the State

Department considered "which offices, overseas posts, or other records systems . . . [would]

reasonably be expected to contain the records requested," id. ¶ 12, and subsequently searched

those entities using specific search terms and discrete time periods, id. ¶¶ 15–16, 18–21, 23–24.

Moreover, based on the specificity of the plaintiff's request, the State Department explicitly

searched the Central Foreign Policy Records despite its prior conclusion that it was unlikely that this repository contained responsive records.[8]  Def's Mem. II at 11.  Thus, based upon the searches described above, the Court finds that the State Department's declaration provides sufficient factual detail of the methods utilized in conducting searches for responsive documents to conclude that the State Department "has conducted . . . search[es] reasonably calculated to uncover all relevant documents." Elliott, 596 F.3d at 851; see also White v. U.S. Dep't of Justice, 840 F. Supp. 2d 83, 89 (D.D.C. 2012) (finding declarations sufficient where they "explain[ed] what system was searched, the terms used, why it was likely to contain responsive documents, and that no other search method would reveal responsive documents").

"Once an agency has made a prima facie showing of adequacy, the burden shifts to the plaintiff to provide . . . evidence sufficient to raise 'substantial doubt' concerning the adequacy of the agency's search." Schoenman v. FBI, 764 F. Supp. 2d 40, 46 (D.D.C. 2011) (citing Iturralde v. Comptroller of Currency, 315 F.3d 311, 314 (D.C. Cir. 2003)).  To that end, the plaintiff submits that the State Department "has failed to conduct an adequate search" for documents used to compile its 2011 Cameroon Report because it "did not produce any of [the sources for the information that he requested]." Pl.'s Mot. at 5–6.  Additionally, the plaintiff alleges that because the few documents deemed responsive and subsequently produced to him are not the documents the plaintiff sought when filing his FOIA request, the defendant's searches were inadequate.  See Pl.'s Opp'n at 2–4.  However, the plaintiff fails to explain why the State

---

[8] The defendant notes that the plaintiff requested searches of the following areas: "The Central Foreign Policy Records File, the archive email folder, classified paper files, unclassified paper files, retired files, retired file manifest, and non-public documents." See Def.'s Mem. II at 11.  At least one of these sources, "[n]on-public documents[,]" is "not a records system maintained at the Department." Id. at 11–12.  The State Department also determined that it was "unlikely that any overseas post, except for the Cameroon Embassy, would have responsive documents as they were not charged with submitting input into the Cameroon report." Id. at 12.

Department's search of the identified systems was insufficient or inadequate, but instead conspiratorially argues that "one conclusion to be drawn from this is that when the [State Department] produced the 2011 Cameroon Country report, it did not obtain any reports from the Cameroon government, nongovernmental organizations in Cameroon, journalists, experts from academia, and from experts on worker's rights, refugees, and women's issues." Pl.'s Opp'n at 4. But "it is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact." Broaddrick v. Exec. Office of President, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (internal quotation marks and citation omitted). Moreover, the fact that the State Department's searches did not produce the specific documents the plaintiff sought does not render the searches inadequate. See Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see also Iturralde, 315 F.3d at 315 ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (internal citation omitted); Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986) (mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them); Clemente v. FBI, 741 F. Supp. 2d 64, 79 (D.D.C. 2010) (finding that a requestor could not demonstrate that the search was inadequate by listing hypothetical documents that she believed could and should have been located and released).

Equally unpersuasive is the plaintiff's assertion that the State Department "should provide at least as many documents in this case as it did in the case of Tarzia v. Clinton[, 10-cv-

5654(FM), 2012 WL 335668 (S.D.N.Y. Jan. 30, 2012) (emphasis added)]," [9] Pl.'s Opp'n at 4. As was the case in Tarzia, "[i]n light of the breadth of the Department's search, the fact that it actually turned up only a few documents 'is not enough to render its search inadequate, even supposing that any reasonable observer would find this result unexpected.'" Tarzia, 2012 WL 335668 at *7 (quoting Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011)). Therefore, absent "specific facts" presented by the plaintiff demonstrating the inadequacy of the State Department's search, Span, 696 F. Supp. 2d at 119, the Court must conclude that the Department, through the Hackett Declaration, has submitted sufficient proof to establish the adequacy of its searches based upon the "circumstances of the case," and the plaintiff has failed to establish "substantial doubt" as to the sufficiency of the searches, see Truitt, 897 F.2d at 542.

---

[9] The State Department utterly fails to respond to this assertion, electing instead to refile an identical version of its Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment as its reply. Thus, if the plaintiff's assertion regarding the inadequacy of the State Department's searches was legally supported, the Court would normally deem this argument conceded by the State Department. See Wannall v. Honeywell, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."). However, because the plaintiff's position is not legally supported, and is, in fact, the proverbial comparison between apples and oranges, the Court cannot deem it conceded. There is simply no basis for the argument that because one FOIA request pertaining to the Human Rights Report of Country X yielded a specific number of documents while a similar request of the Human Rights Report of Country Y yielded fewer documents, the person requesting documents pertaining to Country Y is entitled to the same number of documents as produced regarding Country X. See Iturralde, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." (internal citation omitted)).

The Court is, however, deeply disappointed with the State Department's submission. The Court granted the State Department's contested Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment, ECF No. 14, finding that it was "in the interest of ensuring a just and accurate resolution of this case" to grant the request. Order, ECF No. 16 at 2. Specifically, the Court justified granting the State Department's request because it wanted to "ensure [that] the issues [would be] briefed as thoroughly and concisely as possible." Id. (internal citations omitted). It was certainly not the Court's expectation that the State Department would simply recycle its original opposition, adding only a Response to the Plaintiff's Statement of Material Facts, and fashion it as a reply. Compare ECF No. 17 with ECF No. 18.

**B.  The Applicability of FOIA Exemption 5 and Exemption 6 to the Responsive Documents**

Relying on Exemption 5, of the fifty-seven responsive documents discovered by the State Department, thirty-six documents were withheld in their entirety and sixteen documents were withheld in part. See Hackett Decl. ¶ 48. With the exception of document C05509987, which was withheld in part pursuant to Exemption 6, see id. ¶ 46, all of the documents that were withheld either in full or in part were withheld pursuant to Exemption 5, see id. ¶¶ 36–47. Although the plaintiff raises no objections to the State Department's assertion that the withheld documents fall within the scope of FOIA Exemptions 5 and 6, see generally Pl.'s Opp'n (raising no opposition to the State Department's assertions of Exemption 5 and 6); Def.'s Mem. at 12–16 (asserting Exemption 5 and 6), Def.'s Mem. II at 12–16 (same), the Court will nonetheless examine the propriety of the State Department's invocation of both Exemptions.

### 1.  FOIA Exemption 5: The Deliberative Process Privilege

Exemption 5 of the FOIA provides that "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency" are not subject to disclosure. 5 U.S.C. § 552(b)(5). "To qualify [for non-disclosure under Exemption 5], a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

The threshold issue that must be addressed when Exemption 5 is asserted is whether the records in question qualify as "inter-agency or intra-agency memorand[a]." Judicial Watch, Inc.

v. U.S. Dep't of Commerce, 90 F. Supp. 2d 9, 13 (D.D.C. 2000).  "With respect to the secondary consideration under Exemption 5—whether such materials would not be 'available by law in litigation with the agency,'" id., "the parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery," Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996).  Thus, if a document requested pursuant to the FOIA would normally be subject to disclosure in the civil discovery context, it must also be disclosed under the FOIA. Id. Conversely, information that is routinely not subject to disclosure in the civil discovery process is exempt from disclosure under Exemption 5. Id. Moreover, "to justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context." Id. at 517.  Thus, courts have incorporated three traditional civil discovery privileges into Exemption 5: (1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege.  NLRB v. Sears, Roebuck, & Co., 421 U.S. 132, 148–49, 154–55 (1975); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862, 866 (D.C. Cir. 1980).  Here, the State Department cites the deliberative process privilege as grounds for not disclosing the withheld information.

The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Klamath, 532 U.S. at 8.  The purpose of the deliberative process privilege is "(1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they finally are adopted; and (3) to protect against public confusion that

17

might result from disclosure of reasons and rationale that were not in fact ultimately the grounds for an agency's action." Defenders of Wildlife v. U.S. Dep't of Agric., 311 F. Supp. 2d 44, 57 (D.D.C. 2004) (citing Russell v. Dep't of Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982)); Coastal States, 617 F.2d at 866; Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 772–73 (D.C. Cir. 1978) (en banc)). Thus, when a court reviews whether an agency properly withheld documents under the deliberative process privilege, the critical question to ask is whether "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Formaldehyde Inst. v. Dep't of Health & Human Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989) (internal quotation marks omitted and alteration in original) (quoting Dudman Commc'ns Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987)); see also Sears, 421 U.S. at 151 (noting that the "ultimate purpose of [the deliberative process] privilege is to prevent injury to the quality of agency decisions").

        To be exempt from disclosure under the deliberative process privilege, the agency must show that the information is both (1) "predecisional" and (2) "deliberative." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002). "A document is predecisional if it was 'prepared in order to assist an agency decision-maker in arriving at his decision,' rather than to support a decision already made." Petroleum Info. Corp. v. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir.1992) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)). The preparation of the document, therefore, must be "[a]ntecedent to the adoption of an agency policy." Jordan, 591 F.2d at 774. However, a document cannot be characterized as predecisional "if it is adopted, formally or informally, as the agency position on

an issue or is used by the agency in its dealings with the public." Coastal States, 617 F.2d at 866.

Examples of predecisional documents include "recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of the writer

rather than the policy of the agency." Id.

Citing the deliberative process privilege, the State Department withheld thirty-six

documents in their entirety and redacted sixteen documents prior to their disclosure, see Def.'s

Mem. II at 12–15; Hackett Decl. ¶ 48, asserting that the redacted portions of the responsive

documents contain "draft text, . . . editing comments[,] and suggested red-line edits" and thus are

deliberative and predecisional, see id. ¶¶ 36, 37, 38, 40, 41, 42, 43, 44, 45. Among the

documents withheld are four unclassified "[fifty-two]-page drafts of the 2011 Cameroon Human

Rights Report." [10] Id. ¶ 36. The State Department redacted, in part, "with the exception of

[document] C05526578, which was withheld in full," nine "sensitive but unclassified"

documents [11] of varying length that were "designated [as] 'Version 1' drafts of the [Report] that

were exchanged between DRL and Embassy Youndé in Cameroon in an effort to reach a

consensus on a final version of the report." Id. ¶ 38. The State Department also withheld, in

full, "Version 2," [12] "Version 3," [13] "Version 4," [14] and "Version 5," [15] all draft copies of the final

---

[10] The State Department asserts that documents C05526574, C05509945, C05509981, C05510005, and C05510006 are full "52-page drafts of the 2011 Cameroon Human Rights Report" and "contain nearly identical text." Hackett Decl. ¶ 36.

[11] These include "Documents C0552657 (45 pages), C05526578 (71 pages), C05526581 (52 pages), C05510001 (52 pages), C05510011 (52 pages), C05510013 (51 pages), C05510016 (51 pages), C05510019 (51 pages), C05510021 (50 pages)." Hackett Decl. ¶ 38.

[12] These include documents C05526589 (45 pages), C05509956 (45 pages), C05510029 (49 pages), C05510031 (46 pages), C05510032 (49 pages), C05510033 (51 pages), C05510034 (50 pages), C05510035 (50 pages), C05510036 (50 pages), C05526579 (50 pages), C05510037 (52 pages), and C05510038 (50 pages). Hackett Decl. ¶ 39–40.

Report, Hackett Decl. ¶¶ 39–43, and three "undated drafts"[16] of the Cameroon Report, id.,
asserting that "Version 3," "Version 4," "Version 5," and the three "undated draft[]" copies of
the report were "exchanged between the DRL and Embassy Yaoundé in Cameroon in an effort to
reach a consensus on a final version of the report," id. ¶¶ 41–44.  For all documents withheld in
full, the State Department asserts that it "conducted a line-by-line review of the documents and
determined that there is no additional reasonably segregable, non-exempt material that could be
released." Id. ¶¶ 36–44.

   In addition to the previously discussed withheld documents, the State Department also
withheld, in part, "intra-agency e-mail exchanges among Department officials discussing
revisions to the [Report],"[17] id. ¶ 45, because the "withheld information reflects editing
comments regarding the draft text," including "one paragraph" from document C05509984, "two
words" from document C05509950, "portions of three sentences" from document C05509884,
"ten paragraphs and portions of one sentence" from document C05509887, and "two paragraphs"
from document C05509897, id.  Finally, the State Department redacted "three paragraphs and
five sentences" from Document 05509901 that included a "discussion between Department of

---

(. . . continued)
[13] These include documents C055226590 (43 pages), C05509964 (43 pages), C05526582 (44 pages), C05510027 (44 pages), and C05510040 (44 pages).  Hackett Decl. ¶ 41.

[14]  These include documents C05226591, C05521606, C05509977, and C05510041, all of which "are 43-page 'Version 4' drafts of the [Cameroon Report] . . . ."  Hackett Decl. ¶ 42.

[15] These include documents C05521607, C05226585, C05509972, C05526592, C05526588, and C05510042, all of which are "42-page 'Version 5' drafts of the [Cameroon Report]."  Hackett Decl. ¶ 43.

[16] These include documents C05510043 (43 pages), C05526594 (41 pages), and C05526596 (41 pages).  Hackett Decl. ¶ 44.

[17] These include "Documents C05509984, C05509950, C05509884, C05509887, and C05509897."  Hackett Decl. ¶ 45.

State and Department of Labor (DOL) employees regarding information requested by DOL on child labor and forced labor." Id. ¶ 47. With respect to documents the State Department released to the plaintiff in part, the defendant avows that it "conducted a line-by-line review of [each] document and determined that there [wa]s no additional reasonably segregable, non-exempt material that c[ould] be released." Id. ¶¶ 45, 47.

The plaintiff does not contest the State Department's characterization of the withheld documents as part of the deliberative process privilege that are exempt from disclosure pursuant to Exemption 5. Accordingly, and for the reasons explained above, the Court concludes that the defendants properly asserted Exemption 5 to withhold the documents at issue under the deliberative process privilege.

### 2.  FOIA Exemption 6

Exemption 6 of the FOIA provides that "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," are not subject to disclosure.  5 U.S.C. § 552(b)(6).  "To determine whether an agency has properly invoked . . . [a] personal privacy exemption[], a court must balance the public interest in disclosure against the privacy interest the exemption is intended to protect." Moore, 601 F. Supp. 2d at 13 (citing Dep't of State v. Ray, 502 U.S. 164, 175 (1991)).  "Generally, government employees and officials . . . have a privacy interest in protecting their identities because disclosure 'could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs.'" Moore, 601 F. Supp. 2d at 14 (quoting Halpern v. FBI, 181 F.3d 279, 296–97 (2d Cir. 1999)).

The State Department redacted the "mobile phone number of [one] U.S. Government employee" from document C05509987, citing the employee's "strong privacy interest in his or her personal phone number because the release of this information could result in unwanted attention or harassment." Hackett Decl. ¶ 32. Specifically, the Acting Director of the defendant's Office of Information Programs and Services determined that the release of the employee's phone number "would constitute a clearly unwarranted invasion of personal privacy" because it "would not serve the 'core purpose' for which Congress enacted the FOIA . . . [and] would shed no additional light on the conduct of government business." Id. ¶¶ 1, 33, 34. The plaintiff has raised no public interest that would be served by the disclosure of the employee's phone number. Moreover, he does not challenge the defendant's invocation of Exemption 6. Pl.'s Opp'n at 3. Thus, the defendant's invocation of FOIA Exemption 6 was proper.

### C. Segregability

Under the FOIA, "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1167 (D.C. Cir. 2011). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (citing Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)). And "[while a] 'draft' may become the 'final' [agency document,] . . . [t]he earlier version of the identical document would not be privileged [under Exemption 5] merely because it was labeled a 'draft.'" Sierra Club v. U.S. Dep't of Interior, 384 F. Supp. 2d 1, 18 n.7 (D.D.C. 2004) (quoting Arthur Andersen & Co. v. IRS, 679 F.2d 254, 257–58 (D.C. Cir. 1982)).

The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted). That being said, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, the State Department's series of "Version" drafts that preceded the adoption of the final Report are not duplicate copies of identical documents, but rather are successive evolving renditions of the Report "that reflect[] an internal dialog between Department employees about how to update the [Report] . . . in an effort to reach a consensus on a final version of the report." Hackett Decl. ¶¶ 29, 39, 41, 42, 43, 44. Additionally, the State Department did not withhold any of these documents in their entirety, but instead, "conducted a line-by-line review" of the draft copies of the Report, as it did with all responsive documents, to ensure that all "reasonably segregable, non-exempt material" was released to the plaintiff. Id. ¶¶ 36–47. While the drafts of the Report, specifically Versions 2 through 5, as well as the preliminary and undated drafts, were withheld in full, portions of Version 1, as well as the intra-agency e-mail exchanges, other than "editing comments regarding the draft text [of the Report]," were released to the plaintiff. Id. Furthermore, two documents originally withheld in full, "in an abundance of caution," were subsequently reviewed and eventually released to the plaintiff in part. See id. ¶¶ 8–9.

Based on the State Department's unchallenged representation that it has "conducted a line-by-line review" of each document responsive to the plaintiff's FOIA request, including draft copies of the Cameroon Report, to ensure that all "reasonably segregable, non-exempt material"

23

was released to the plaintiff, id. ¶¶ 36–47, the Court concludes that the Department has satisfied its segregability obligation under the FOIA, see, e.g., DiBacco v. U.S. Dep't of the Army, 983 F. Supp. 2d 44, 65 (D.D.C. 2013) (finding the agency's segregability requirement satisfied where it conducted a "document-by-document" review for segregable information and the plaintiffs failed to offer evidence rebutting the agency's representations in this regard in its declaration)

## IV. CONCLUSION

For the foregoing reasons, the State Department has submitted sufficient factual detail for the Court to find that it conducted reasonable and adequate searches to discover documents responsive to the plaintiff's FOIA request, released to the plaintiff all documents not otherwise subject to an applicable FOIA Exemption, and released to the plaintiff all reasonably segregable information not otherwise exempt from disclosure. Accordingly, the Court must grant the State Department's motion for summary judgment.

**SO ORDERED** this 11th day of September, 2015.[18]

REGGIE B. WALTON
United States District Judge

---

[18] A final order will be issued contemporaneously with this memorandum opinion.